# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BALLERINA MANLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-17-667-STE |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for disability insurance benefits and supplemental security income under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **AFFIRMS** the Commissioner's decision.

## I.  PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration denied Plaintiff's applications for benefits. Following an administrative hearing, an Administrative Law Judge (ALJ) issued a partially favorable decision. (TR. 20-36). The Appeals Council denied

Plaintiff's request for review. (TR. 1-6). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II.   THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520 & 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her amended onset date of May 21, 2010. (TR. 26). At step two, the ALJ determined that Ms. Manley had the following severe impairments: degenerative disc disease of the back; obesity; multiple sclerosis; and depressive disorder. (TR. 27). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR. 27). At step four, the ALJ concluded that Ms. Manley retained the residual functional capacity (RFC) to:

> [P]erform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except no climbing ladders, ropes, or scaffolds; simple tasks with routine supervision; no public contact; no customer service work; able to interact with supervisors and co-workers on a superficial work basis; able to adapt to work situations.

(TR. 29). With this RFC, the ALJ concluded that Plaintiff was unable to perform any past relevant work. (TR. 34). As a result, the ALJ made additional findings at step five. There, the ALJ presented several limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform given her RFC. (TR. 35, 67-70). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles (DOT) that Plaintiff could perform. (TR. 35, 64-70). The ALJ adopted

the testimony of the VE and concluded that Plaintiff was not disabled between her amended onset date of May 21, 2010 and August 6, 2013. (TR. 35-36). However, the ALJ then found that as of August 6, 2013, the date that Plaintiff turned 50, Plaintiff was disabled via direct application of Medical-Vocational Rule 201.14. (TR. 36).

## III. ISSUES PRESENTED

On appeal, Plaintiff alleges that the ALJ and the Appeals Council (AC) failed to adequately evaluate post-hearing evidence submitted by Plaintiff's treating physician. Plaintiff further argues that the ALJ erred in her consideration of Plaintiff's visual limitations and "cherry-picked" the evidence concerning Plaintiff's pain complaints.

## IV. STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V. EVIDENCE FROM DR. RICKNER

Plaintiff alleges that the ALJ failed to discuss "all of the relevant medical records" from Plaintiff's treating physician, Dr. Kyle Rickner, and failed to provide "good reasons"

3

for the weight given to the opinions of this physician. (ECF No. 12:3). Specifically, Plaintiff alleges that (1) insufficient consideration was given to a post-hearing letter from Plaintiff's treating physician and (2) the ALJ erred in weighing an August 2014 opinion from the same physician. (ECF No. 12:6-10).

### A. Post-Hearing Letter of July 8, 2016

The first piece of evidence in question was submitted by Dr. Rickner on July 8, 2016, several months after Plaintiff's hearing before the ALJ. (TR. 875). In this letter, Dr. Rickner briefly recounts Plaintiff's medical history between 2011 and 2012, and states his opinion that Plaintiff was not "mentally or physically capable" of maintaining a job during this period. (TR. 875). Plaintiff contends that Dr. Rickner's statement constitutes a "clarifying" opinion that illuminates the nature of Plaintiff's condition during the period when Plaintiff was symptomatic but had not yet been diagnosed with multiple sclerosis. (ECF No. 12:8). Plaintiff argues that Dr. Rickner's opinion constitutes new and material evidence, and that the Appeals Council failed to give it proper consideration in denying Plaintiff's request for review. (ECF No. 12:7-8). Plaintiff argues that the Appeals Council merely stated, "without any reference to the newly submitted materials (other than as an attached exhibit)" that it was denying Plaintiff's request for review. (ECF No. 12:9). Plaintiff suggests that by not discussing Dr. Rickner's opinion in detail, the Appeals Council may not have evaluated the entire record, and therefore a remand is necessary to correct a "substantial legal error." (ECF No. 12:9). Plaintiff is incorrect.

Plaintiff argues that the ALJ failed to consider "all of the relevant medical records", specifically Dr. Rickner's "mental *and physical* opinion." (ECF No. 12:10) (emphasis in

4

original). Plaintiff's argument is illogical since, as Plaintiff acknowledges, the ALJ did not have access to Dr. Rickner's letter at the time she rendered her decision. (TR. 36, 875), (ECF No. 12:7,10).

Tenth Circuit case law clearly establishes that while the Appeals Council must consider newly submitted evidence, it is not required to specifically discuss the effect of new evidence on its ultimate disposition, and that a "conclusory statement" that it has considered the new evidence is sufficient. *See Vallejo v. Berryhill*, 849 F.3d 951, 956 (10th Cir. 2017); *Martinez v. Barnhart*, 444 F.3d 1201, 1207 (10th Cir. 2006). In this case, the Appeals Council indicated that it had considered the letter from Dr. Rickner by listing it among the post-hearing exhibits submitted to the Council. (TR. 4).

Implicit in Plaintiff's arguments is the contention that a proper evaluation of Dr. Rickner's letter would have led the ALJ to find Plaintiff disabled beginning in 2011. However, Dr. Rickner's brief post-hearing statement does little to undercut the ALJ's original RFC findings. Dr. Rickner's statement does not identify what specific functional limitations Plaintiff had during the period at issue, and by declaring that Plaintiff was not "mentally or physically capable" of performing a job between 2011 and 2012, Dr. Rickner offered an opinion on a question of disability reserved for the Commissioner of Social Security. *See* 20 C.F.R. § 404.1527(d)(1). Social Security regulations establish that the agency will give no "special significance" to the source of an opinion on issues reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(3).

Further, Dr. Rickner's assertion that Plaintiff was not physically capable of performing any work activity during the period at issue is not supported by the record.

5

While Plaintiff has often complained of pain, fatigue, and other symptoms stemming from her physical impairments, physical examinations of Plaintiff conducted in 2011 and 2012 were routinely normal, revealing a normal gait and full strength in Plaintiff's upper and lower extremities. (TR. 408, 480, 482, 485, 627, 643, 646, 648). The ALJ fully considered the medical evidence concerning Plaintiff's physical impairments, and her assessment of a sedentary RFC is supported by substantial evidence. (TR 30-32).

Plaintiff also advances the argument that Dr. Rickner's letter establishes that Plaintiff was suffering from undiagnosed multiple sclerosis during the period at issue. (ECF No. 12:8). The logic of Plaintiff's argument is unclear, since the assessment of Plaintiff's RFC is based upon Plaintiff's functional limitations rather than her specific diagnosis—whether her condition was classified as a musculoskeletal impairment or multiple sclerosis, her symptoms, and the attendant functional limitations, would have been identical. *See Scull v. Apfel*, 221 F.3d 1352 (10th Cir.2000) (unpublished), 2000 WL 1028250, 1 (disability determinations turn on the functional consequences, not the causes of a claimant's condition).

### B. Opinion of August 20, 2014

Plaintiff further argues that (1) the ALJ erred in giving little weight to Dr. Rickner's August 20, 2014 opinion that Plaintiff had a range of marked and extreme limitations in the ability to carry out work-related mental tasks, and (2) that the ALJ did not identify the objective evidence which contradicted Dr. Rickner's opinion. (TR. 584-586). (ECF No. 12:9-10). Plaintiff is incorrect.

Specifically, Plaintiff argues that the ALJ erred by dismissing Dr. Rickner's opinion regarding Plaintiff's ability to perform work-related mental tasks as "outside the doctor's area of expertise as a general physician." (TR. 33-34). The ALJ's statement concerning Dr. Rickner's area of expertise is a simple statement of fact—Dr. Rickner is not a mental health practitioner.

Plaintiff further argues that the ALJ did not identify the objective evidence that contradicted Dr. Rickner's opinion (TR. 33). The ALJ did identify the objective evidence she relied upon in weighing Dr. Rickner's August 2014 opinion, referring to numerous mental status examinations in which Plaintiff exhibited intact attention, judgment, comprehension, and social functioning. (TR. 33).

## VI. VISUAL IMPAIRMENT

Plaintiff argues that the ALJ "failed to properly discuss and review" medical evidence concerning Plaintiff's visual impairment. (ECF No. 12:11). In June of 2010, Plaintiff was diagnosed with chronic granulomatous anterior uveitis in the left eye. (TR. 387). Plaintiff argues, without support, that Plaintiff's visual impairment is related to her multiple sclerosis, and that her condition will restrict her field of vision and "impact her ability to continuously see without blurred vision." (ECF No. 12:11). Diagnosis of a condition does not automatically mean that the claimant is disabled; what matters is whether the condition results in work-related limitations. *See e.g. Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (the mere diagnosis of arthritis says nothing about the severity of the condition), *Madrid v. Astrue*, 243 Fed. Appx. 387, 392 (10th Cir. 2007) (the diagnosis of a condition does not establish disability; the question is whether an

7

impairment significantly limits the ability to work). Plaintiff's argument is speculative—there is no evidence that Plaintiff's visual impairment causes specific functional limitations, and no physician has opined that Plaintiff's uveitis would result in any work-related restrictions. Further, in the June 2010 examination referenced by Plaintiff, the examining ophthalmologist found that Plaintiff's vision was largely intact, assessing her as having 20/20 vision in her right eye and 20/30 vision pin holing to 20/25 in her left eye. (TR. 387).

## VII. PAIN ANALYSIS

According to Plaintiff, the ALJ erred in that she "minimized" Plaintiff's complaints, and "dismissed" her pain allegations. (ECF No. 12:3). Plaintiff argues that the ALJ performed a "cherry-picking and perfunctory pain analysis." (ECF No. 12:12). Specifically, Plaintiff argues that the ALJ's discussion of Plaintiff's pain complaints "speak only to pain control, not how she is functioning when her pain is under control," and that the ALJ did not consider the side effects of Plaintiff's pain medication on her ability to function. (ECF No. 12:13). Plaintiff further argues that the ALJ never gave "any credence" to the effects of Plaintiff's pain and headaches. (ECF No. 12:13). Plaintiff's argument is factually inaccurate. In her decision, the ALJ did discuss Plaintiff's headaches, pain complaints, and the effects of her pain medication on her ability to perform activities of daily living. (TR. 29-30).

**ORDER**

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court finds that the factual findings are supported by substantial evidence in the record and the correct legal standards were applied. Thus, the Court **AFFIRMS** the Commissioner's decision.

ENTERED on February 28, 2018.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE